## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ROGELIO PEREZ-SANCHEZ,<br><br>    Defendant. | No. CR02-4065-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Charges, Conviction, Sentencing, and Appeal* . . . . . . . . . . . . . . . . . . 2
    *B. The Motion To Vacate Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . . . 4
        *1.    Relief on the merits of the claims* . . . . . . . . . . . . . . . . . . 4
        *2.    Entitlement to an evidentiary hearing* . . . . . . . . . . . . . . . . 6
    *B. The "Booker Error"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    *C. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *1.    Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        *2.    Ineffective assistance of trial counsel* . . . . . . . . . . . . . . . 11
        *3.    Ineffective assistance of appellate counsel* . . . . . . . . . . . . 13
    *D. Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

This matter comes before the court pursuant to the June 17, 2004, *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. No. 283 ) by defendant Rogelio Perez-Sanchez. In his motion, Perez-Sanchez seeks relief from his sentence to 293 months of imprisonment following his plea of guilty to a charge of conspiracy to distribute 500 grams or more of a methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Perez-Sanchez seeks such relief based on a "*Booker* error" in his sentencing, ineffective assistance by his trial counsel in failing to assert the same, and ineffective assistance of appellate counsel in failing to raise alleged violations of the Vienna Convention on appeal. The court finds that the motion is now ripe for disposition.

## I. INTRODUCTION

### A. Charges, Conviction, Sentencing, and Appeal

In an Indictment handed down on July 25, 2002, defendant Perez-Sanchez was charged with conspiracy to distribute 500 grams or more of a methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. Thereafter, on March 11, 2003, Perez-Sanchez pleaded guilty to the charge before United States Magistrate Judge Paul A. Zoss. Following the plea hearing, Judge Zoss issued a Report and Recommendation recommending acceptance of Perez-Sanchez's guilty plea (Doc. No. 169). On March 31, 2003, the undersigned accepted Judge Zoss's Report and Recommendation, to which no objections had been filed (Doc. No. 179). At a sentencing hearing held on June 17, 2003, the undersigned found that Perez-Sanchez was responsible for more than 30,000 kilograms of marijuana equivalent and set the base offense level at 38 pursuant to U.S.S.G. § 2D1.1(a)(3) (2002). Perez-Sanchez's offense level was then reduced three levels for acceptance of responsibility, but then enhanced two levels for

playing a supervisory role in the drug conspiracy. This led to a final offense level of 37, with a sentencing range of 235 to 293 months imprisonment. The undersigned sentenced Perez-Sanchez to 293 months of imprisonment. Perez-Sanchez filed a notice of appeal following his sentencing on June 26, 2003 (Doc. No. 223). Specifically, on appeal he contested the two-point supervisory role enhancement. The United States Court of Appeals for the Eighth Circuit affirmed Perez-Sanchez's sentence on April 5, 2004. Following the denial of his appeal, Perez-Sanchez filed the current motion pending before the court.

### *B. The Motion To Vacate Sentence*

On June 17, 2004, Perez-Sanchez filed his *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. No. 283) and a corresponding *pro se* Motion to Proceed In Forma Pauperis (Doc. No. 282). Thereafter, Perez-Sanchez filed a *pro se* Memorandum in Support of his § 2255 motion on July 12, 2004 (Doc. No. 284). Perez-Sanchez's § 2255 motion sought relief on the following grounds: (1) a "*Booker* error," based on Perez-Sanchez's contention that a jury, not the sentencing judge, should have determined the amount of drug quantity attributed to him for sentencing purposes; (2) ineffective assistance of trial counsel in failing to challenge the constitutionality of 21 U.S.C. § 841 to the extent that those provisions permitted the court to make drug quantity and role determinations in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (3) failure of appellate counsel to argue that Perez-Sanchez's rights under the Vienna Convention were violated during his plea hearing on appeal. Thereafter, on April 5, 2005, Perez-Sanchez filed a *pro se* Motion for Leave of Court to Stay § 2255 Proceedings, requesting that this court stay the § 2255 proceedings and grant him leave to file a supplemental brief consistent with *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005) (Doc. No. 293). The

court will consider Perez-Sanchez's claims in turn, after a brief review of the standards applicable to his § 2255 motion.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

#### 1. Relief on the merits of the claims

The court must first consider the standards applicable to a motion for relief from sentence pursuant to 28 U.S.C. § 2255. Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71

4

> L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1346 (2006). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged

5

offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'"), *cert. denied*, 126 S. Ct. 2341 (2006) (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

### 2. *Entitlement to an evidentiary hearing*

As the Eighth Circuit Court of Appeals recently explained,

> A petitioner is entitled to an evidentiary hearing on a § 2255 motion unless "the motion and the files and the records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. We review the district court's decision not to hold an evidentiary hearing for an abuse of discretion. *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001). "That standard is somewhat misleading, however, because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Id.* Therefore, in order to determine if [a movant under § 2255] is entitled to remand for an evidentiary hearing, we must consider the validity of his [claim for § 2255 relief]. *Id.*

*United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005). More

specifically, "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003), with citation and quotation marks omitted). "In some cases, the clarity of the existing record on appeal makes an evidentiary hearing unnecessary, [but] [a]bsent such clarity, an evidentiary hearing is required." *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999). At the evidentiary hearing, if one is required, the defendant must establish that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623; *accord Latorre*, 193 F.3d at 1038 (quoting this standard from *Bousley*).

In this case, the court concludes that no evidentiary hearing is required on any issue, because the record "conclusively show[s] that [Perez-Sanchez] is entitled to no relief" on any of his claims, as the court will explain in more detail below. 28 U.S.C. § 2255; *Ledezma-Rodriguez*, 423 F.3d at 835-36.

### B. The "Booker *Error*"

Perez-Sanchez's first claim for § 2255 relief is an alleged "*Booker* error," based on the fact that his sentence was determined under the mandatory Guidelines regime. Perez-Sanchez contends that the then-mandatory Guidelines impermissibly allowed a sentencing judge to adjust the sentencing range based on a preponderance of the evidence, and that as such, his Sixth Amendment rights were violated because this function should have been performed by a jury based on a beyond a reasonable doubt standard in light of the Supreme Court's decision in *Booker*. This is apparently a contention that his "sentence was imposed

in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255 (stating this and other grounds for relief); *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States.").

On January 12, 2005, the United States Supreme Court handed down its decision in *Booker*. In *Booker*, the Court issued two separate majority opinions. *See* 543 U.S. at 226, 244. First, Justice Stevens, writing for the Court, held that the rule announced in *Blakely* applied to the federal sentencing guidelines. *Id.* at 243-44. Justice Stevens's opinion was grounded on the premise that the federal sentencing guidelines were mandatory and imposed binding requirements on all sentencing judges. *Id.* at 233-34. The second majority decision, with Justice Breyer writing for the Court, invalidated two provisions of the Sentencing Reform Act of 1984 that had the effect of making the Guidelines mandatory. *Id.* at 245-46. However, by its very terms, *Booker* states that it is to apply "to all cases on direct review." *Id.* at 268. The decision makes no reference to cases on collateral review. Every federal court of appeals, including the Eighth Circuit Court of Appeals, to have considered the issue has held that *Booker* does not apply retroactively to cases on collateral review. *See Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005); *see also Lloyd v. United States*, 407 F.3d 608, 615-16 (3rd Cir.), *cert. denied*, 126 S. Ct. 288 (2005); *Guzman v. United States*, 404 F.3d 139, 143-44 (2d Cir.), *cert. denied*, 126 S. Ct. 731 (2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 312 (2005); *United States v. Price*, 400 F.3d 844, 845 (10th Cir.), *cert. denied*, 126 S.Ct. 731 (2005); *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.), *cert. denied*, 125 S. Ct. 2599 (2005). Because this case was not pending on direct review when *Booker* was decided, the holdings of *Booker*

would be inapplicable as a basis to attack the sentence here. *See Never Misses A Shot*, 413 F.3d at 783; *see also Lloyd*, 407 F.3d at 615-16; *Guzman*, 404 F.3d at 143-44; *Varela*, 400 F.3d at 868; *Price*, 400 F.3d at 845; *Humphress*, 398 F.3d at 857; *McReynolds*, 397 F.3d at 481. Therefore, this part of defendant Perez-Sanchez's motion is **denied**, and his Motion for Leave of Court requesting the court stay the § 2255 proceedings on these same grounds is **denied as moot**.

### C. *Ineffective Assistance Of Counsel*

Perez-Sanchez's second claim is that he received ineffective assistance of counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." *U.S. Const. Amend.* VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d at 780. By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Perez-Sanchez is entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

### *1. Applicable standards*

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *Ledezma-Rodriguez*, 423 F.3d at 836 (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable

professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997). The court will now consider Perez-Sanchez's second allegation asserted in his § 2255 motion.

### 2. *Ineffective assistance of trial counsel*

Perez-Sanchez contends that his trial counsel was ineffective in failing to anticipate *Booker*, in light of *Apprendi*, which had been decided at the time of Perez-Sanchez's sentencing. He contends that, even though the decision in *Apprendi* was brought to counsel's attention before sentencing, counsel still did not specifically challenge the adjustment of his sentence based on judicial-made determinations by a preponderance of the evidence, specifically with respect to Perez-Sanchez's alleged role in the conspiracy

11

and his attributed drug quantity. Thus, he contends that he was sentenced on the basis of facts that were not proved to a jury beyond a reasonable doubt. He argues that the constitutional issue should have been apparent at the time of sentencing and that his counsel's failure to raise it prejudiced him, because a higher sentence was imposed.

This ground affords Perez-Sanchez no relief. First, it behooves the court to note that *Apprendi* did not, on its face, address judicial fact-finding that establishes the maximum *Guidelines sentencing range*, because *Apprendi* was cast only in terms of a constitutional requirement for jury determination of facts that establish the maximum *statutory* penalty. *See Apprendi*, 530 U.S. at 490. The *Blakely* decision, which applied *Apprendi* to invalidate that part of Washington State's sentencing scheme that allowed a judge to find facts increasing the defendant's mandatory guidelines sentence, had not been handed down at the time of Perez-Sanchez's sentencing. Thus, this court cannot find that counsel was constitutionally ineffective in failing to raise Perez-Sanchez's argument concerning judicial fact-finding under mandatory Sentencing Guidelines, based on *Apprendi*, because "[w]hile the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)). Thus, this claim fails on the first prong of the "ineffective assistance" analysis, because counsel's performance was not "deficient." *See Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must first show that counsel's performance was "deficient"); *Davis*, 423 F.3d at 877 (same). Because there was no "deficient performance," the court need not consider the "prejudice" prong for this "ineffective assistance" claim. *Walker*, 324 F.3d at 1040. Therefore, this part of defendant Perez-Sanchez's motion is also **denied.**

### *3. Ineffective assistance of appellate counsel*

Perez-Sanchez further contends he received ineffective assistance from his appellate counsel who failed to raise on direct appeal certain violations of Article 36 of the Vienna Convention on Consular Relations and Optional Protocol Disputes, 21 U.S.T. 77, TIAS No. 6820 [hereinafter Vienna Convention].[1] The Vienna Convention was drafted in 1963 with the purpose, as evinced in its preamble, of "contribut[ing] to the development of friendly relations among nations, irrespective of their differing constitutional and social systems." *Id*. at 79. Two portions of the Vienna Convention are relevant to Perez-Sanchez's claims. First, the Preamble includes the following explanatory clause:

> Realizing that the purpose of such privileges and immunities is not to benefit individuals but to ensure the efficient performance of functions by consular posts on behalf of their respective States . . . .

*Id*. This provision appears to imply that the Vienna Convention creates no individual rights, enforceable by detained persons, but only a right in the governments that are parties to it to complain to each other of violations. By contrast, Article 36 of the the Vienna Convention, which concerns consular officers' access to their nationals detained by authorities in a foreign country, provides as follows:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
> (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

---

[1] "The [Vienna] Convention consists of 79 articles regulating various aspects of consular activities. At present, 170 countries are party to the Convention." *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2675 (2006).

> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody, or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;
> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody, or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody, or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody, or detention if he expressly opposes such action.
> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

21 U.S.T. at 100-01. In particular, the provision in Article 36(1)(b) that professes "[t]he . . . authorities [of the receiving State] shall inform the person concerned without delay of *his* rights under this subparagraph," arguably appears to recognize that a detained person does have rights under the Vienna Convention. *See United States v. Ortiz*, 315 F.3d 873, 886 (8th Cir. 2002). It is this provision that Perez-Sanchez contends was violated by various authorities as he avers he was never once informed of his rights under the Vienna Convention. As the Eighth Circuit noted in *United States v. Santos,* 235 F.3d 1105, 1107-08 (8th Cir. 2000), the federal courts are not in agreement as to whether Article 36 of the

Vienna Convention creates a right enforceable by an individual who has been arrested. *Compare, e.g., Standt v. City of New York,* 153 F. Supp. 2d 417 (S.D.N.Y. 2001) (individually enforceable right is created); *United States v. Hongla-Yamche,* 55 F. Supp. 2d 74 (D. Mass. 1999), *with, e.g., United States v. Emuegbunam,* 268 F.3d 377 (6th Cir. 2001); *United States v. Jimenez-Nava,* 243 F.3d 192 (5th Cir. 2001); *United States v. Li,* 206 F.3d 56, 61-62 (1st Cir. 2000) (en banc). Neither, unfortunately, has the Supreme Court directly confronted the issue, though the Court has stated that the Vienna Convention "*arguably* confers on an individual the right to consular assistance following an arrest." *Breard v. Greene,* 523 U.S. 371, 376 (1998) (per curiam) (emphasis added). Even more recently, in *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669 (2006), the Supreme Court once again opted to leave open-ended the question of whether the Vienna Convention created enforceable individual rights. There, the Supreme Court simply assumed, *without deciding*, that the Vienna Convention did create such rights because such a determination was unnecessary to resolve the defendants' claims. *Id.* at 2677. More specifically, the Supreme Court held that, assuming the Vienna Convention created enforceable individual rights, suppression of evidence via the exclusionary rule was not an appropriate remedy for such a violation. *Id.* at 2678-79. Thus, *Sanchez-Llamas* does not control the instant case.

However, the majority of federal courts that have addressed the issue have concluded that the Vienna Convention does *not* create enforceable individual rights. Rather, in practice, most countries remedy violations of Article 36 with investigations, review and reconsideration of convictions, apologies, and efforts to ensure that future violations do not occur; '[a]pparently no country remedies violations of the Vienna Convention through its criminal justice system.'" *Jimenez-Nava*, 243 F.3d at 392-93 (citing *Li*, 206 F.3d at 65). Unfortunately, the Eighth Circuit has not affirmatively decided

15

the issue. *See United States v. Ortiz*, 315 F.3d at 886 (assuming, without deciding, that the Vienna Convention creates an individually enforceable right). In light of the fact that neither the Supreme Court, nor the Eighth Circuit has directly addressed the issue, this court can not find that counsel was constitutionally ineffective in failing to raise Perez-Sanchez's argument that he was never informed of his rights under Article 36. This is so because "[w]hile the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)). This conclusion is bolstered by the fact that the majority of courts addressing this issue have determined that the Convention does *not* create such individual rights, and thus, the likelihood of an outcome in favor of the defendant with respect to such a claim is improbable at best. *See, e.g., Head Money Cases*, 112 U.S. 580, 598 (1884) (holding that a treaty is "primarily a compact between independent nations," and "depends for the enforcement of its provisions on the interest and the honor of the governments to which are parties to it").

Further, even if this court were to assume that the Vienna Convention did create an individually enforceable right, Perez-Sanchez is unable to prove prejudice. A violation of the Vienna Convention, in and of itself, does not render the defendant's conviction invalid. As the Supreme Court has stated, "it is extremely doubtful that . . . violation [of the Convention] should result in the overturning of a final judgment or conviction without some showing that the violation had an effect on the trial." *Breard*, 523 U.S. at 377. The Eighth Circuit has dovetailed onto the principle enunciated in *Breard* and further stated that "[a court] ha[s] no warrant for overturning the sentence without some showing that the violation had an effect on it." *Ortiz*, 315 F.3d at 887. In sum, this record contains no evidence that any alleged violations of the Vienna Convention prejudiced the defendant in

any way. As Judge Oda of the International Court of justice once stated, "[I]f consular contact had occurred at the time of [the defendant's] arrest or detention, the judicial procedure in the United States domestic courts relating to his case would have been no different." *LaGrand,* (*Germany v. U.S.*)*,* 1999 I.C.J. 9 (Mar. 3) (declaration of Judge Oda).[2]

### D. Certificate Of Appealability

Defendant Perez-Sanchez must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that

---

[2]As mentioned previously, the defendant did not raise this claim on direct appeal. To the extent his brief can be read as directly asserting this contention outside the context of an ineffective assistance of counsel claim, his direct claim must also fail for the same reasons his ineffective assistance of counsel claim fails—namely, because Perez-Sanchez cannot show a "complete miscarriage of justice," has occurred, thereby entitling to collateral review, due to the utter lack of prejudice in this case. *Ramey*, 8 F.3d at 1314; *accord Johnson*, 278 F.3d at 844 ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley*, 523 U.S. 614, 622 (1998) (citations omitted)).

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court determines that Perez-Sanchez's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); *Fed. R. App. P.* 22(b). Accordingly, with respect to Perez-Sanchez's claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## III. CONCLUSION

Upon the foregoing, Rogelio Perez-Sanchez's June 17, 2004, *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. No. 283) is **denied in its entirety.** Consequently, both Perez-Sanchez's *pro se* June 17, 2004, Motion to Proceed In Forma Pauperis (Doc. No. 282) and his *pro se* April 5, 2005, Motion for Leave of Court Motion for Leave of Court to Stay § 2255 Proceedings (Doc. No. 293) are rendered moot and therefore, are also **denied**.

**IT IS SO ORDERED.**

**DATED** this 17th day of October, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA